UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, *et al.*, | ) ) ) | CASE NO. 12 CV 1750 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| COOPER INDUSTRIES PLC, *et al.*, | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendants. | ) | |

This is a shareholder derivative action relating to the proposed sale of Defendant

Cooper Industries plc (Cooper) to Defendant Eaton Corporation (Eaton).  Plaintiffs allege that

Defendants have violated Irish corporate law and provisions of the Securities Exchange Act

of 1934 (the Exchange Act) in connection with the proposed sale.

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended

Complaint.  (Doc. 28.)  For the reasons stated below, the motion is granted.

**Facts**

The following facts are alleged in Plaintiffs' "Amended Complaint for Violations of

the Securities Exchange Act of 1934 and Oppression."  Cooper is an Irish corporation and a

1

global electrical products manufacturer.  The principal executive offices of Cooper are located in Maynooth, Ireland.  Eaton is an Ohio corporation and diversified power management company.  Individual defendants Kirk S. Hachigian, Gerald B. Smith, Linda A. Hill, Dan F. Smith, Stephen G. Butler, Ivor J. Evans, James J. Postl, Lawrence D. Kingsley, and Mark S. Thompson are all directors of Cooper.[1]

On May 21, 2012, Eaton issued a press release announcing that the individual defendants had entered into an agreement to sell Cooper to Eaton for cash and shares valued at $72 per Cooper share (the "Proposed Acquisition").  The press release stated that at the close of the transaction, Eaton and Cooper will be combined under a new company incorporated in Ireland expected to be called "New Eaton."  Cooper also issued a press release on May 21, 2012, confirming the Proposed Acquisition.  Cooper's press release stated that New Eaton will file with the SEC (the U.S. Securities and Exchange Commission), "a registration statement on Form S-4 that will include the Joint Proxy Statement of Eaton and Cooper and that also constitutes a Prospectus of New Eaton."  The press release urged shareholders to read the joint proxy when it became available because it would contain "IMPORTANT INFORMATION ABOUT EATON, COOPER, NEW EATON, THE TRANSACTIONS AND RELATED MATTERS."  (Complt., ¶ 43.)  Cooper subsequently filed a preliminary proxy statement with the SEC on June 22, 2012 (the Proxy).[2]

---

[1]  The individual defendants will be referred to as the "director" or "individual defendants."

[2]  The Proxy was included as part of Eaton's original registration statement filed with the SEC on Form S-4.  (Complt., ¶1.)

Plaintiffs, Louisiana Municipal Police Employees Retirement System and Frank E. Waters, are shareholders of Cooper.  Plaintiffs allege that, due to the individual defendants' "eagerness" to enter into a transaction with Eaton beneficial to themselves, defendants failed to implement a process to obtain the maximum price for the sale of Cooper for shareholders. Rather, plaintiffs allege that defendants engaged in a "deficient sales process" in agreeing to sell Cooper to Eaton that failed to maximize shareholder value.  Plaintiffs allege the consideration of $72 per share offered to Cooper shareholders in the Proposed Acquisition is unfair to shareholders.[3]

Plaintiffs allege that the Proxy was materially misleading and that defendants filed it with the SEC in order to secure shareholder approval of the unfair Proposed Acquisition. (Complt., ¶¶ 1, 57.)  Plaintiffs allege that the Proxy, which recommends that shareholders vote in favor of the Proposed Acquisition, "omits/or misrepresents material information about the unfair sale process, the unfair consideration, and the true intrinsic value of the Company."

---

[3]

Plaintiffs acknowledge that the consideration of $72 per Cooper share represents a 29% *premium* to the price at which Cooper stock was trading prior to the announcement of the Proposed Acquisition, but plaintiffs contend this premium is inadequate when compared to premiums offered in similar transactions in the same sector over the last five years.  Further, plaintiffs allege that other analysts valued Cooper at a higher price than $72 per share.  In addition, plaintiffs allege that the Merger Agreement Cooper filed with the SEC discloses that the individual defendants agreed to a number of "draconian deal protection devices to preclude any competing bids for [Cooper]." Specifically, plaintiffs allege that Cooper is subject to a no-solicitation clause, which prohibits Cooper from seeking unsolicited superior offers for the company.  The Merger Agreement also conveys upon Eaton "unlimited information and matching rights" such that even if the company does receive an unsolicited offer, the company is required to provide all information to Eaton whereupon Eaton will have unlimited opportunities to adjust its offer.  And an "Expenses Reimbursement Agreement" requires Cooper to pay Eaton certain costs and expenses incurred by Eaton if Cooper terminates the Proposed Acquisition.  Plaintiffs allege that all of these provisions serve to unreasonably deter or discourage superior offers for shareholders.

3

(*Id.*, ¶ 57.) "Among other information, the Proxy omits and/or misrepresents material information in contravention of section 14(a) and 20(a) of the Exchange Act regarding the fairness opinion provided by Cooper['s] financial advisor, Goldman Sachs & Co. (Goldman Sachs), including the data and inputs underlying its valuation analysis." (*Id.*, ¶ 8.) Specifically, plaintiffs allege the following specific misrepresentations/omissions in the Proxy:

1. The "Background of the Transaction" section of the Proxy on pages 62-68 fails to disclose: (1) how the Board derived $72 per share as an adequate price on May 12, 2012, given the fact that on April 5, 2012, Eaton offered $74 per share; and (ii) why the Board decided against soliciting other potential acquirers. Without this information, shareholders are unable to determine the sufficiency of the process that led to the Proposed Acquisition and whether the Board took all steps to maximize shareholder value;

2. The discussion of Goldman Sachs's "Selected Companies Analysis" on page 88 of the Proxy fails to disclose: (i) the summary statistics for each of the comparable companies; (ii) what criteria were used to select the companies and multiples Goldman Sachs considered; (iii) the observed multiples for each of the comparable companies; (iv) the individual ranges of value derived using management's estimates and publicly available research analyst estimates; and (v) the selected reference ranges applied (if any) to the Company's earnings before interest, taxes, depreciation, and amortization ("EBITDA") and earnings per share ("EPS") for its trailing twelve months as well as calendar year 2011 in the analysis. This information is material because without it, shareholders "are unable to independently assess whether Goldman Sachs's analysis, as set forth in the Proxy, is an adequate measure of this

4

value assessment and what weight, if any, to place on the fairness opinion in deciding how to vote on the Proposed Acquisition."

3.  The description of Goldman Sachs's "Discounted Cash Flow Analysis" on page 89 of the Proxy fails to disclose:  (i) the inputs and assumptions used by Goldman Sachs to derive the range of discount rates used in its analysis, which appear to be particularly excessive at 9.5% and 10.5% to 11%; (ii) the inputs and assumptions used by Goldman Sachs to derive the range of EBITDA multiples used in its analysis of 8.0x to 10.5x and 5.8x to 7.5x; (iii) the definition of "unlevered free cash flows;" (iv) what Cooper's unlevered free cash flows were or any inputs necessary to derive such figures; (v) the five-year EBITDA average for each business segment used by Goldman Sachs to calculate the terminal value; (vi) what other companies with growth and margin profiles similar to those of the Company's electrical products and diversified industrials business did Goldman Sachs review to select the range of multiples for its analysis and what were the multiples at those companies; and (vii) whether and how stock based compensation was considered in the analysis.  Because the Discounted Cash Flow Analysis is very sensitive to its inputs, specifically the EBITDA multiples and discount rates selected to calculate estimated terminal values, this information is critical to shareholders' understanding of how the analysis was performed, whether that analysis was performed properly, and in turn, what weight, if any, to place on Goldman Sachs's Discounted Cash Flow Analysis (and its fairness opinion generally) when determining whether to vote for the Proposed Acquisition.

4.  The description of Goldman Sachs's Transaction Analysis on page 89 of the Proxy fails to disclose:  (i) the financial metrics and/or multiples used for each of the selected

precedent transactions; and (ii) the selected reference ranges (if any) applied to Cooper's twelve months trailing EBITDA.  Without this information, shareholders are unable to independently assess whether Goldman Sachs's analysis, as set forth in the Proxy, is an adequate measure of this value assessment and what weight, if any, to place on the fairness opinion in deciding how to vote on the Proposed Acquisition.

5.  Goldman Sachs's Present Value of Future Stock Price section on pages 90-91 of the Proxy fails to disclose the financial projections for each management case for years 2012 through 2014 by segment of:  (i) revenue; (ii) adjusted EBITDA; (iii) EBITDA; (iv) adjusted operating income; (v) operating income; (vi) stock-based compensation expense; and (vii) unlevered free cash flow.  Without this information, shareholders are unable to determine the fairness of the consideration in the Proposed Acquisition.

(Complt., ¶¶ 58-62.)

Plaintiffs allege that the individual defendants were aware of their duty to disclose the foregoing material information in the Proxy and acted with at least negligence in failing to ensure that the material was disclosed.

Arising from these allegations, plaintiffs allege claims under Sections 14(a) and 20(a) of the Exchange Act.  Count one alleges that by disseminating "the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading," the individual defendants, Cooper, and Eaton "made untrue statements of material facts and omitted to state material necessary to make the statements that were made not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder."

6

The Proxy "misrepresented and/or omitted material facts, including material information about the actual intrinsic value of the Company."  (Complt., ¶¶ 77-79.)

Count two alleges a claim against the individual defendants for the alleged material misrepresentations and omissions – as "controlling persons"– under Section 20(a) of the Exchange Act.  Count two alleges that:

> The Individual Defendants acted as controlling persons of Cooper within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Cooper, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly and indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiffs contend are false and misleading.

(*Id.*, ¶ 85.)

In addition to their federal claims under the Exchange Act, count three alleges a claim against the individual defendants for "oppression" under Irish corporate law.  This claim is based on plaintiffs' allegations that the individual defendants breached their fiduciary duties to Cooper shareholders by entering into the Proposed Acquisition that was beneficial to Eaton and their own interests without carrying out an adequate process to obtain the best price for shareholders, and which did not obtain the best price for shareholders.  Rather, plaintiffs allege the directors engaged in an inadequate process that led to an inadequate price for Cooper shareholders.  Plaintiffs allege the individual defendants have acted in a manner "oppressive" to shareholders under Section 205 of the Irish Companies Act of 1963 because the individual defendants:  (a) failed to take steps to maximize the value of Cooper to its public shareholders; (b) failed to properly value Cooper and its various assets and operations;

7

and (c) ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Acquisition.  (*Id.*, ¶ 94.)

Plaintiffs seek declaratory and injunctive relief in the action, including:  (i) enjoining defendants from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain a transaction that provides the best possible terms for shareholders, and defendants disclose all material information concerning the Proposed Acquisition to Cooper shareholders; (ii) a directive to the individual defendants to obtain a transaction which is in the best interests of Cooper shareholders; and (iii) rescission of, to the extent already implemented, the Merger Agreement or any of its terms.  (*See id.*, ¶10.)

The director defendants and the "Eaton" defendants, *i.e.*, Eaton and Turlock Corporation,[4] move for an order dismissing plaintiffs' Amended Complaint.

**Standard of Review**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.  In order to survive a motion to dismiss, a complaint's factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.  *Ass'n of Cleveland Firefighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555

---

[4]

Defendant Turlock Corporation is an Ohio corporation.  The Complaint alleges that "[u]pon completion of the Proposed Acquisition , Turlock will merge into Eaton." (Complt., ¶ 28.)  Other corporate entities are also named as defendants in the Complaint, but the moving defendants assert (and plaintiffs do not dispute) that service of the Complaint has not yet been made on other named corporate defendants (including Cooper, Comdell Limited, Aleiron Limited, and Turlock B.V.), and they have not joined the pending motion to dismiss.

(2007)). The complaint must contain sufficient factual material to state a claim "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Furthermore, Fed. R. Civ. P. 9(b) requires that a party pleading fraud must state the circumstances constituting fraud with "particularity." The Private Securities Litigation Reform Act of 1995, (PSLRA), applicable to private actions asserting violations of securities laws, also imposes specific pleading requirements. Under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PLSRA provides in pertinent part:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant--
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

9

*Id.*

In determining a motion to dismiss, the Court may consider matters of public record, including "securities filings made with the SEC." *See, e.g., Monday v. Meyer*, Case No. 10 CV 1838, 2011 WL 5974664, at *2 (N.D. Ohio Nov. 29, 2011).

**Discussion**

*Plaintiffs' Disclosure Claims under Sections 14 and 20 of the Exchange Act*

Section 14(a) of the Exchange Act provides:

> It shall be unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security.

15 U.S.C. § 78n(a)(1).

The SEC's implementing regulation at issue in plaintiffs' complaint is SEC Rule 14a-9, which provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a-9(a).

Section 20(a) of the Exchange Act imposes joint and several liability on any "person who, directly or indirectly, controls any person liable" for securities fraud under the Exchange Act, "unless the controlling person acted in good faith and did not directly or indirectly induce" the violation. 15 U.S.C. § 78t(a).

Defendants contend plaintiffs' complaint fails to allege an actionable primary §14(a)/Rule 14a-9 violation as a matter of law and should be dismissed.  Defendants point out

10

that plaintiffs' disclosure claims are based solely on alleged "omissions" of information from

the Proxy.  Plaintiffs do not allege that any affirmative misstatement or misrepresentation was

made.  An "[o]mission of information from a proxy statement will violate Section 14(a) and

Rule 14a-9 only if either the SEC regulations specifically require disclosure of the omitted

information in a proxy statement, or the omission makes other statements in the proxy

statement materially false or misleading."  *Local 295/Local 851 IBT Emp'r Group Pens. v.*

*Fifth Third Bancorp*, 731 F. Supp.2d 689, 716 (S.D. Ohio 2010).  *See also Seinfeld v.*

*Becherer*, 461 F.3d 365, 369-70 (3d Cir. 2006) (The omission of information from a proxy

statement will violate § 14(a) and Rule 14a-9 if either the SEC regulations specifically require

disclosure of the omitted information in a proxy statement, or the omission makes other

statements in the proxy statement materially false or misleading.  An omitted fact is material

if there is a substantial likelihood that a reasonable shareholder would consider it important in

deciding how to vote.)

Defendants contend plaintiffs' complaint does not allege either of these circumstances.

They assert that plaintiffs' "underlying allegations do not plead (at all) that any of the alleged

omissions were specifically required by the SEC regulations or that [the alleged omissions]

'ma[de] other statements in the proxy statement materially false or misleading.'"  Further,

defendants contend plaintiffs' allegations do not meet the PSLRA's statutory pleading

standards, requiring plaintiffs to "specify each statement alleged to have been misleading"

and the "reasons why [each] statement is misleading."  Defendants assert:  "[N]owhere in the

Complaint do plaintiffs identify even one specific statement in the Proxy that they allege to be

misleading, let alone explain with particularity the reasons why the allegedly omitted

information rendered that specific statement misleading."  (Def. Mem. at 8.)

Defendants also argue that the omissions plaintiffs allege are insufficient to support a securities disclosure-related claim under §14(a) in any event because all of the omitted information plaintiffs allege is either actually disclosed in the Proxy or is immaterial as a matter of law.

In this regard, defendants point out in their motion that, although the Proxy referred to in plaintiffs' complaint refers to the preliminary proxy defendants filed with the SEC, the preliminary proxy has been superceded by a definitive final merger proxy statement filed with the SEC on September 14, 2012.  Defendants attach the now-operative definitive Proxy to their motion to dismiss.  (Def. Ex. A.)[5]

Defendants contend that "much of the specific information plaintiffs allege to have been omitted from the Preliminary Proxy is in fact presented in the [Definitive] Proxy."  First, defendants assert that the omissions plaintiffs allege regarding the background of the transaction, (*i.e.*, how the Cooper board derived $72 per share and why the board decided against soliciting other potential acquirers) are disclosed in the definitive Proxy.  (Def. Mem. at 10-11.)  Defendants also argue that other information is also disclosed.  They argue:

> • Plaintiffs allege that the description of Goldman Sachs's Selected Companies Analysis in the proxy does not disclose what criteria were used to select the companies Goldman Sachs considered and the observed multiples for each of the comparable companies.  Compl. ¶ 59.  To the contrary, the [definitive] Proxy discloses all of this information on page 84, explaining that the companies were chosen because they are publicly traded companies in the electrical products and diversified industrials industries with operation, market

---

[5]

Plaintiffs concede that the definitive Proxy was the proxy statement mailed to shareholders and is now the operative proxy statement.  The definitive proxy will hereinafter be referred to as either "the Proxy" or "the definitive Proxy."

sizes and product profiles that for purposes of analysis may be considered similar to certain operations, market sizes and product profiles of Cooper and Eaton."  The [definitive] Proxy discloses the observed multiples for each of the selected companies on page 84 as well.

 • Plaintiffs allege that the description of Goldman Sachs's Selected Transactions Analysis does not disclose the financial metric and/or multiples used for each of the selected precedent transactions.  Compl. ¶ 61.  To the contrary, the enterprise value as a multiple of last twelve months EBITDA ("LTM EBITDA") is disclosed for each of the selected transactions on page 85 of the [definitive] Proxy.

• Plaintiffs allege that description of Goldman Sachs's Present Value of Future Stock Price analysis does not disclose a variety of Cooper management's financial projections for the years 2012-2014, including projections for EBITDA.  To the contrary, the [definitive] Proxy includes financial projections for Cooper EBITDA on page 89, as well as projections for sales, EBIT, and earnings per share.

(Def. Mem. at 13-14.)

Further, defendants cite Delaware case law to support the proposition that a board need not disclose all of the "specific details" or "raw data behind" a financial advisor's opinion but must disclose only "a fair summary of the valuation work" the financial advisor performed.  (Def. Mem. at 12.)  Defendants assert that the definitive Proxy contains extensive disclosures of the financial analyses of Cooper's financial advisor, Goldman Sachs.  They point out that the complete financial opinion of Goldman Sachs is attached as Annex to the Proxy.  In addition, the Proxy includes an "11-page summary of Goldman Sachs's financial analysis, including its Historical Stock Trading Analysis, its Selected Companies Analysis, its Illustrative Cash Flow Analyses, its Illustrative Present Value of Future Stock Price Analyses, its discussion of Cooper's Unaudited Prospective Financial Information, and its discussion of Eaton's Unaudited Prospective Financial Information."  The Proxy also includes a 14-page description of the analyses done by Eaton's independent financial advisors, Citigroup Global

13

Markets and Morgan Stanley & Co., and the full text of both of their opinions.  Defendants

argue that plaintiffs' allegations of material omissions regarding Goldman Sachs's financial

analyses cannot stand in light of the extensive financial disclosures made in the Proxy.

Defendants argue that the extensive financial information provided in the Proxy provides

more than "a fair summary of the valuation work" performed by financial advisors; therefore,

the various "details" plaintiffs allege to be omitted from Goldman Sachs's financial analysis

are not material as a matter of law.[6]

---

[6]

     In support of this proposition, defendants largely rely on *In re Cogent Inc S'holder Litig.*, 7 A.3d 487, 510-11 (Del. Ch. 2010).  The *Cogent* court held in connection with a motion for a preliminary injunction that a defendant did not make material omissions regarding a financial advisor's analysis.  The court reasoned that:

> [Defendant] disclosed a plethora of facts relating to Credit Suisse's analysis. The Company has given detailed information regarding Credit Suisse's DCF, Selected Public Companies, and Selected Transaction Analyses.  Moreover, the Company has provided the stockholders, through the Recommendation Statement, with many of the raw inputs, including a wide variety of multiples, discount rates, and dates. While it is always possible to request just one more piece of information, when viewing the Recommendation Statement as a whole, I am satisfied that the Company has provided more than a fair summary of Credit Suisse's analysis. Moreover, given the level of detail already provided, I find it unlikely that the information requested by Plaintiffs would "significantly alter[ ] the 'total mix' of information made available" to Cogent stockholders.  Therefore, Plaintiffs' claim that the Company has omitted material information regarding Credit Suisse's analyses is without merit.

     The court also found that the defendant did not make material omissions as to the sales process.  The court ruled:

> While directors must give stockholders an accurate, full, and fair characterization of the events leading up to a board's decision to recommend a tender offer, Delaware law does not require a play-by-play description of every consideration or action taken by a Board, especially when such information would tend to confuse stockholders or inundate them with an overload of information.  With this standard in mind, I find

14

In sum, defendants contend plaintiffs have not alleged a plausible violation of § 14(a) of the Exchange Act or of SEC Rule 14a-9 because plaintiffs' complaint does not meet the pleading requirements for a claim of omission under § 14(a) and because the definitive Proxy discloses all material information.  Defendants contend that plaintiffs have no viable claim under Section 20(a) because there is no primary violation of Section 14(a) or Rule 14a-9.[7]

Plaintiffs acknowledge in their opposition brief that much of the information their complaint alleges is omitted from the Proxy is in fact disclosed in the definitive Proxy.  And plaintiffs concede that the definitive Proxy moots "certain" of their federal disclosure claims. Nonetheless, plaintiffs contend they have adequately pled cognizable §14(a) and Rule 14a-9 claims because the definitive Proxy still contains material omissions, specifically, omissions as to:  "(i) the Company's financial projections; (ii) the key inputs and assumptions underlying the fairness opinion provided . . . by . . .  Goldman Sachs; and (iii) the sales

---

that Cogent has satisfied its fiduciary duty to disclose all material facts regarding the sales process leading up to the 3M deal. First, Cogent's description of the sales process in its Recommendation Statement, spanning eight pages, provides a breadth of information about the chronology of the Board's actions vis à vis different potential suitors. Moreover, in addition to describing the reasons Cogent considered the 3M deal attractive, the Recommendation Statement provides specific reasons why the Board decided to accept the offer from 3M rather than await a more definite offer from Company D. The Board mentioned . . . factors . . . . Based on the breadth and depth of these disclosures, it is unlikely that the inclusion of more detail about the reasons for accepting 3M's offer, as opposed to waiting for Company D to complete its due diligence, would have altered the total mix of information a reasonable stockholder would consider in determining whether to tender his shares.

[7]

Defendants also argue that plaintiffs have failed to plead sufficient facts to demonstrate that defendants are control persons within the meaning of Section 20(a).

process that led to the Proposed Acquisition."  (Pltf. Opp. at 9-10.)  Plaintiffs assert that "[t]o

properly plead a section 14(a) . . . claim, the plaintiff must allege that a particular statement or

omission is material."  (Pltf. Opp. at 9.)

       With respect to financial projections, plaintiffs acknowledge that the definitive Proxy

added "certain projected financial information," including line items for sales, EBITDA,

EBIT, and Earnings per share; however, plaintiffs contend the definitive Proxy still omits

"full financial forecasts, particularly the estimates for free cash flow."  Plaintiffs argue that

"the omission of the full financial forecasts renders misleading the description of Goldman

Sachs's financial analyses in the Proxy and also the incomplete financial forecasts disclosed

in the Definitive Proxy."  (Pltf. Opp. at 11.)

       Second, plaintiffs contend that "still missing from the Definitive Proxy are the

underlying inputs and assumptions used to generate the discount rates and terminal values

used in Goldman Sachs's DCF analysis."  (*Id*. at 12.)  Citing to paragraphs 59-62 of their

Complaint, plaintiffs state in their opposition brief that, despite defendants' contention to the

contrary, they have specifically identified "the sections of the Preliminary Proxy rendered

misleading by these omissions."  (*Id.* at 13.)

       Finally, with respect to the process leading to the Board's decision to approve the

proposed transaction, plaintiffs assert:  "Although Defendants at least partially addressed

these deficiencies in the Definitive Proxy" (in particular, defendants disclosed that Cooper's

Board of Directors believed Eaton lowered its price because of turmoil in global financial

markets and that discussions with three other parties did not result in a superior bid), "even

considering [defendants'] additional disclosures, there is no clear and full explanation of why

the Board readily accepted the lesser price, why the discussions with the other parties failed, nor why the Board did not consider expanding its solicitation effort beyond this limited group." (*Id.* at 14.) Plaintiffs further assert in their opposition brief: "[T]he Board's failure to fully and fairly disclose all material information about the events leading up to the merger automatically renders the Board's entire account of the sales process materially misleading because it distorts shareholders' view of whether the Company carried out a full and fair sales process to achieve the best possible price."

The Court grants defendants' motion to dismiss plaintiffs' disclosure claim alleged in count one. To the extent plaintiffs contend it is enough for a plaintiff simply to allege that material information was omitted from a proxy statement in order to state a claim under §14(a), plaintiffs are incorrect. Rather, as defendants point out, federal courts have held that in order to sufficiently allege the elements of a an omission claim under §14(a) and Rule 14a-f, the plaintiff must identify a precise "statement" in a proxy that is either affirmatively misleading or that is rendered misleading by the operation of a materially omitted fact. *See, e,g., Hysong v. Encore Energy Partners LP*, Case No. 11-781, 2011 WL 5509100, at * 8 (D. Del. Nov. 10, 2011); *Local 295/Local 851 IBT Emp'r Group v. Fifth Third Bancorp*, 731 F. Supp.2d at 716.

In *Hysong*, for example, the plaintiff objected to a proposed acquisition of a partnership. As here, plaintiff alleged that the consideration offered to the partnership's public shareholders was unfair and inadequate given the company's financial performance and prospects for future growth and that defendants had imposed onerous and preclusive deal protection devices to ensure that no competing offers for the partnership emerged. Plaintiff's

17

substantive claims were that defendants violated §§14(a) and 20(a) of the Exchange Act by filing with the SEC a materially misleading and incomplete registration statement.  Plaintiff identified two categories of materially misleading information omitted from the registration statement:  (1) information regarding the sales process leading up to the proposed transaction, including the reasonable efforts made to auction the partnership prior to entering into a Merger Agreement and what other strategic alternatives were available to the partnership besides the proposed sale; and (2) the underlying methodologies, projections, key inputs and multiples relied upon and observed by financial advisors.  As actionable omissions, plaintiffs asserted the lack of disclosure of "comparative public companies analysis," "comparative transactions analysis," the "dividend discount model" and the "discounted cash flow analysis."  Plaintiff alleged that the omitted information taken together was necessary for the partnership's unitholders to cast an informed vote as to whether to approve the transaction.

The court held that plaintiff's complaint failed to raise a reasonable expectation of a right to relief under §14(a) and SEC Rule 14a-9 and granted defendants' motion to dismiss.  The court held that plaintiff's allegations – that defendants filed a materially misleading and incomplete registration statement because the statement omitted allegedly material information about the sales process, the consideration, and the true intrinsic value of the company rendering unitholders unable to cast an informed vote – were insufficient to state a claim.  The court held that, even though the plaintiff desired to know more alleged "material" information about the transaction, in order to adequately plead a claim based on a "materially misleading omission," the plaintiff was required to allege that defendants omitted to state a material fact that made *other* statements in the proxy false or misleading.  The court stated:

18

"[The plaintiff] must point to a statement that is misleading, or is made misleading by operation of a material omission.  [Plaintiff's] failure to identify even one specific misleading statement cannot push his factual allegations over the speculative-level threshold."  *Hysong*, 2011 WL 5509100, at * 8.

Plaintiffs' complaint likewise fails to identify any specific statement in the Proxy that is rendered misleading by the material omissions plaintiffs posit.  The complaint, even read liberally in plaintiffs' favor, does not plead that any specific statement made in the Proxy is, or was rendered, false or misleading.  (Indeed, the complaint does not even plead the *conclusion* that statements in the Proxy are rendered false or misleading by alleged omissions.)

Plaintiffs attempted to meet the pleading requirements by identifying various portions of the Proxy rendered misleading by defendants' alleged omissions in their opposition brief.  As noted above, plaintiffs assert in their opposition brief that:  (1) defendants' alleged omission of "full financial forecasts" "renders misleading the description of Goldman Sachs's financial analyses in the Proxy and also the incomplete financial forecasts disclosed in the Definitive Proxy" (Pltf. Opp. at 11); (2) "the sections of the Preliminary Proxy" that were rendered misleading by the alleged omissions regarding the underlying inputs and assumptions used to generate the discount rates and terminal values are identified in paragraphs 59-62 of the complaint (Pltf. Opp. at 13); and (3) the alleged omission of all material information of the events leading up to the merger "automatically renders the Board's entire account of the sales process materially misleading."  (Pltf. Opp. at 15).

These assertions in plaintiffs' opposition brief, however, are vague, conclusory, and

insufficient to allege a viable omission disclosure claim under § 14(a) and Rule 14a-f with particularity even *if* these assertions were alleged in plaintiffs' complaint.  Simply, plaintiffs' arguments do not identify with particularity any "specific statement" in the Proxy that is rendered misleading by defendants' alleged omissions, and they do not state the specific reason or reasons why (each) such statement is rendered misleading.  Instead, plaintiffs vaguely and generally assert that "the description of Goldman Sachs's financial analyses in the Proxy," "the financial forecasts disclosed in the Proxy," various "sections of the Preliminary Proxy," and "the Board's entire account of the sales process" were rendered misleading.  The Court finds these vague and conclusory assertions insufficient to state a §14(a)/Rule 14a-9 omission claim.  None of plaintiffs' cases contradict the mandatory pleading requirement that a specific false or misleading "statement" be identified.[8]

  Accordingly, defendants' motion to dismiss count one is granted.  The plaintiffs have

---

[8]

  The federal cases plaintiffs cite address other issues in connection with securities and common law fraud claims, mainly whether various information is "material," but these cases in no way contradict the requirement that a plaintiff must plead that a specific statement is misleading.  Indeed, *Brown v. Brewer*, No.06-3731, 2008 WL 6170885, at * 2 (C.D. Cal. July 14, 2008), cited by plaintiffs, addresses the issue of materiality in connection with a §14(a)/Rule 14(a)-9 claim and *acknowledges* that in order to state a claim, a plaintiff must allege "an omission of a material fact that makes any portion of the statement misleading."  Plaintiffs' other federal cases likewise do not contradict this pleading rule.  *See Helwig v. Vencor, Inc.*, 251 F.3d 540, 563 (6th Cir. 2001)(addressing whether an allegedly forward-looking statement was material for purposes of claim under Section10(b) of the Exchange Act); *U.S. v. Smith,* 155 U.S. 1051, 1064, n. 20 (9th Cir. 1998) (holding that "soft" information in the form of forecasts of future sales and revenue may be material within the meaning of Rule 10b-5); *Metro Life Ins. Co. v. Ditmore*, 729 F.2d 1, 5 (1st Cir. 1984)(addressing Massachusetts common law fraud claim and stating that under some circumstances partial disclosures and half truths are tantamount to misrepresentations of fact); *McMahan & Co. v. Wherehouse Entertainment, Inc.,* 900 F.2d 576 (2d Cir. 1990) (finding material issue existed as to whether offering materials misstated right to tender in violation of §10(b) of the Exchange Act and §§ 11 and 12 of the Securities Act of 1933).

not identified any SEC Rule requiring the disclosure of the information plaintiffs still contend is omitted from the Proxy, and plaintiffs have not identified in their Complaint, *or* in their opposition brief, any specific statement or statements in the Proxy that are rendered false or misleading by operation of the alleged omissions.  As the *Hysong* court recognized, even though a plaintiff "might want more information," a plaintiff is only entitled to the information required by Rule 14a-9.  *Hysong*, 2011 WL 5509100, at * 8.  Plaintiffs have not pled sufficient facts to show a plausible violation of the Rule.[9]

Defendants' motion to dismiss count two, alleging a claim against the individual defendants under § 20(a) of the Exchange Act, is also granted.  "In order to prove a *prima facie* case under section 20(a), a plaintiff must prove a primary violation of federal securities laws and that the targeted defendants  . . .  exercised actual power or control over the primary violator."  *In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp.2d 887, 906 (N.D. Ohio 2002).  Given that the plaintiffs fail to state a cause of action against the individual defendants under §14(a) of the Exchange Act and SEC Rule 14a-f for the reasons discussed above, there is no primary violation on which a section 20(a) claim can be premised.  Accordingly, the section 20(a) claim is subject to dismissal as well.[10]

---

[9]

Given this holding, the Court does not address defendants' alternative arguments that the information plaintiffs claim is still omitted is either disclosed in the Proxy or is "immaterial" as a matter of law.

[10]

In a footnote in their brief, plaintiffs assert that they "should, at a minimum, be afforded an opportunity to file an amended complaint" should the Court find that plaintiffs "have not alleged with sufficient specificity which statements in the Proxy were made misleading by Defendants' omissions."  (Pltf. Opp. at 15, n.7.)  But plaintiffs' assertion in the footnote is not a "request" for leave and is not a valid motion.  Further, plaintiffs do not state in their footnote what if any additional allegations they could make

*The Irish Law Claim*

Plaintiffs allege in count three that, in accordance with Section 205 of the Irish Companies Act of 1963, any shareholder who complains that the affairs of a company are being conducted or that the powers of the directors of a company are being exercised in a manner "oppressive" to any of the members, or in disregard of his or their interests as members, may apply to the Court for any order to bring an end to the matters complained of. (Complt., ¶ 90.)  As noted above, plaintiffs's claim is that the individual defendants have acted in a manner oppressive to shareholders in connection with the Proposed Acquisition and seek the Court to enjoin defendants' alleged unlawful and "oppressive" actions.

Defendants move to dismiss plaintiffs' Irish law claim for multiple reasons, including that the Court should decline to exercise supplemental jurisdiction over the Irish law claim under 28 U.S.C. § 1367(c).[11]  Section 1367(c) identifies the circumstances under which a district court may decline to exercise supplemental jurisdiction over a non-federal law claim:

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, or

    (3) the district court has dismissed all claims over which it has original

---

in an amended complaint.  Given this, and that plaintiffs had the opportunity to state the specific statements they claim were rendered misleading in their opposition brief but did not do so, plaintiffs have not given the Court any reason to believe that an amended complaint would be anything other than futile.  There is no reason for the Court to authorize plaintiff to file an amended complaint on the basis of the footnote alone.

[11]

    Defendants also contend the Court should dismiss the Irish law claim on the basis of the doctrine of *forum non conveniens* and because plaintiffs have not demonstrated that they are "members" of Cooper under Irish law such that they have standing to assert a claim under the Irish Companies Act.

22

jurisdiction, or

(4) in exceptional circumstances, there are other reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Defendants contend that all of the bases identified in the statute for declining supplemental jurisdiction exist here.  First, defendants assert that plaintiffs' federal securities claims lack merit and that if those claims are dismissed, the Court should also decline to exercise jurisdiction over plaintiffs' remaining non-federal Irish claim.  Second, the Court should decline jurisdiction under § 1367(c)(2) because the Irish law claim substantially predominates over the federal claims.  In this regard, defendants assert that the "great majority of the Complaint's allegations refer to the Irish law oppression claim, and the six paragraphs of allegations regarding federal law disclosure violations appear tacked on merely to create jurisdiction in this Court."  (Def. Mem. at 17.)  Third, defendants contend the Court should decline jurisdiction under § 1367(c)(2) because plaintiffs seek to apply Ireland's oppression statute in an unprecedented way, in the context of a public company transaction that treats all shareholders alike, where the shareholders are able to vote on a proposed transaction.  Defendants assert that they are unable to locate law applying the oppression statute in this context and contend the Court should decline to create Irish law in the absence of meaningful Irish precedent or guidance.  Finally, defendants contend the Court should decline jurisdiction under § 1367(c)(4) because plaintiffs have the opportunity to raise the same claims raised here before the Irish High Court, whose approval of the proposed transaction is a mandatory condition to closing and where proceedings are already underway.

Plaintiffs urge the Court to exercise supplemental jurisdiction, denying that the factors

23

for declining supplemental jurisdiction are present.  In particular, they deny that their Irish

claim presents a novel or complex issue of Irish law but, rather, assert that Irish corporate law

generally comports with United States law "in requiring corporate directors to comply with

their fiduciary duties to act in the best interest of the company and shareholders."  In addition,

plaintiffs deny that defendants have shown that the Irish law claim substantially predominates

over the federal securities claims.  And they assert that Irish High Court review is not an

adequate forum in which to litigate their claims because, among other reasons, "High Court

review does not offer plaintiffs an opportunity to seek damages to compensate them for the

harm caused by the underpriced sale of the Company."  (Pltf. Opp. at 21.)

       Defendants' arguments, however, are persuasive that the Court should decline to

exercise supplemental jurisdiction over the Irish law claim.  First, for the reasons discussed

above, the Court has granted defendants' motion to dismiss plaintiffs' federal disclosure

claims under the Exchange Act; therefore, supplemental jurisdiction is properly declined

under 28 U.S.C. § 1367(c)(3).  As the Sixth Circuit has recognized, "[w]hen all federal claims

are dismissed before trial, the balance of considerations usually will point to dismissing the

state law claims, or remanding them to state court if the action was removed."  *Gamel v. City

of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010).  The balance of factors point toward

dismissal of the Irish law claim.  No  substantial proceedings have occurred in this Court, and

defendants have persuasively demonstrated that the Irish law claim presents a novel issue of

Irish law.  As defendants point out, although plaintiffs argue that their Irish law claim is not

novel and complex because Irish directors have the same fiduciary duties as U.S. directors,

plaintiffs have <u>not</u> alleged a common law claim for breach of fiduciary duty under Irish law.

24

They have alleged a claim for "oppression" under Section 205 of the Irish Companies Act. Plaintiffs do not refute defendants' assertion that no Irish court has addressed Section 205 of the Irish Companies Act in the context presented here, a proposed public company transaction where all shareholders are treated alike and where shareholders will be able to vote on the proposed transaction. Thus, it appears that if the Court were to address plaintiffs' Irish law claim, it would be doing so without any meaningful guidance from Irish courts. In light of this, supplemental jurisdiction is properly denied under 28 U.S.C. § 1367(c)(1) and well as (c)(3). The better course is for plaintiffs to litigate their claim of "oppression" under the Irish Companies Act before an Irish court. Furthermore, although plaintiffs state that Irish High Court review is not adequate because such review "does not offer plaintiffs an opportunity to seek damages to compensate them for the harm caused by the underpriced sale of the Company," plaintiffs do not seek to recover money damages in their complaint.

For all of these reasons, the Court declines to exercise supplemental jurisdiction over plaintiffs' Irish law claim under 28 U.S.C. § 1367(c).[12]

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss is granted. Plaintiffs have failed to state a plausible federal claim for relief under the Exchange Act, and the Court declines to exercise supplemental jurisdiction over plaintiff's remaining Irish law claim under 28 U.S.C. §1367(c).

---

[12]

　　　Accordingly, the Court will not address defendants' alternative arguments that plaintiffs lack standing and that the Irish law claim should be dismissed under the doctrine of *forum non conveniens*.

25

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan                            
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/16/12